1   Jeffery L. Caufield (SBN 166524)
    jeff@caufieldjames.com
2   Kenneth E. James (SBN 173775)
    ken@caufieldjames.com
3   CAUFIELD & JAMES, LLP
    2851 Camino Del Rio South, Suite 410
4   San Diego, California 92108
    Telephone: 619-325-0441
5   Facsimile : 619-325-0231

6   Attorneys for Plaintiffs, Greve
    Financial Services, Inc., Angeles
7   Chemical Company, Inc., and John
    Locke

8

9               **UNITED STATES DISTRICT COURT**

10         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11 ANGELES CHEMICAL COMPANY, | Case No:  01-10532 TJH (Ex) |
| 12 INC., a California Corporation, GREVE | |
| FINANCIAL SERVICES INC., a | MEMORANDUM OF POINTS |
| 13 California Corporation, and JOHN | AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR |
| 14 LOCKE, an individual, | DISQUALIFICATION OF DR. ROUHANI, MR. HALL, AND |
| 15                 Plaintiffs, | NEWFIELDS |
| 16 | |
| vs. | |
| 17 | Date: April 7, 2008 |
| | Time: Under Submission |
| 18 MCKESSON CORPORATION, a | Courtroom:  17 |
| California Corporation, et. al., | Judge:  Hon. Terry J. Hatter, Jr. |
| 19 | |
| 20                 Defendants. | Discovery Cut-Off: June 11, 2007 Pre-Trial Conference: June 23, 2008 Trial Date: TBD |
| 21 | |

22

23

24

25

26

27

28

Table of Contents

I.    Introduction............................................................................1

II.   Factual and Procedural History...............................................3

      A.   This Court Disqualified Dr. Stephens and DB Stephens Over Three
           Years Ago on October 4, 2004 ...........................................3

      B.   McKesson Ignored and Intentionally Violated this Court's Order by
           Transferring the DB Stephens Work Product to McKesson's
           Consulting Experts Nancy Bice and Geosyntec, Which This Court
           Also Disqualified on January 18, 2008..................................5

III.  Legal Argument.....................................................................7

      A.   This Court Has the Inherent Authority to Disqualify NewFields and
           the Individual Testifying Experts for McKesson......................7

      B.   McKesson's Counsel Admits a Conscious and Deliberate Violation of
           This Court's 2004 Disqualification Order...............................8

      C.   Dr. Rouhani Should Be Disqualified...................................10

           1.   Dr. Rouhani Admittedly Read, Reviewed and Relied Upon
                Approximately 735 Opinions and Data Entries Created by Dr.
                Stephens and DB Stephens (Now Disqualified) – In Direct
                Contravention of this Court's Prior Order of October,
                2004.....................................................................10

           2.   Dr. Rouhani Has Admitted Relying Upon the Opinions, Reports
                and Data Generated by Nancy Bice and Geosyntec (Both
                Disqualified) for His Own Opinions and Testimony
                Here.....................................................................12

           3.   Dr. Rouhani Relies Upon Nancy Bice and Lisa Van Tassell of
                Geosyntec (All Disqualified) For His Testifying Opinions in this
                Litigation.............................................................13

      D.   More Importantly, Mr. Hall Should Also Be Disqualified............14

i

1        1.     McKesson and Its Counsel Admit that Their Intent Was to Have

Mr. Hall Rely Upon DB Stephens Opinions, Data and Work

Product, and "Step Into the Shoes" of Dr. Stephens…….…......14

        2.     Mr. Hall Also Amazingly Admits Relying Upon Hundreds of

Opinions and Data Entries of DB Stephens and Dr. Stephens

Disqualified from this Litigation Over Three Years Ago..…......14

        3.     McKesson and Its Counsel Have Now Been Caught Red-

Handed "Doctoring" the Evidence Regarding Mr. Hall's

Testifying Opinions, Attempting to Hide His Reliance Upon Dr.

Stephens and DB Stephens………….....................................15

        4.     Mr. Hall Admittedly Relied Upon the Opinions of Nancy Bice

and Geosyntec (Now Disqualified) in Preparing His Own

Opinions and Testimony Here……………………….…..18

        5.     Mr. Hall Relies Upon Nancy Bice and Lisa Van Tassell of

Geosyntec (All Disqualified) For His Testifying Opinions in this

Litigation………………………………...………………..19

        6.     Mr. Hall Relies Upon the Tainted Opinion of Dr. Rouhani…..19

E.    Dr. Rouhani, Mr. Hall and NewFields Should Also be Disqualified

Because They Have Had Extensive Communications with the "DB

Stephens Six"………………………………………………..…20

F.    Magnifying McKesson's Misconduct, McKesson and Its Counsel

Were Less Than Forthright With This Court When They Certified That

They NEVER Gave the DB Stephens Data or Opinions to NewFields

or Its Testifying Experts………………………………………..…20

G.    NewFields as a Whole Should be Disqualified Because So Many Top-

Level People Have Received Information Regarding Dr. Stephens, DB

Stephens, Nancy Bice and Geosyntec………………………..…21

H.   NewFields Appears to Already Have Begun Purging Its Connections to Prior Disqualified Experts…………………………………………..……….22

I.   The Parties Have Extensively Met and Conferred On These Issues…………………………………………………………………23

J.   Policy Considerations Prohibit the Use of a Disqualified Expert's Work Product…………..……………………………………..………..24

K.   Angeles Will Be Irreparably Prejudiced Should NewFields and Its Experts Be Permitted to Continue in This Litigation……………………………………………..……….……..25

IV.   Conclusion………………………………………………………………..…..25

# TABLE OF AUTHORITIES

## CASES

American Protection Insurance Company v. MGM Grand Hotel-Las Vegas, Inc.

1986 WL 57464 at *6 (D.Nev. 1986)............................................................9

Campbell Industries v. M/V Gemini

619 F.2d 24, 27 (9th Cir. 1980)..................................................7,21,24

Cargill Inc. v. Budine

Slip Copy, 2007 WL 1813762 at *10 (E.D. Cal., June 22, 2007)................……......8

Chambers v. NASCO, Inc.

501 U.S. 32, 43 (1991).....................................................................…....7

Erickson v. Newmar Corp.

87 F.3d 298, 301 (9th Cir. 1996)...........................................................…..24

Hewlett-Packard v. EMC Corp.

330 F. Supp. 2d 1087, 1095 (N.D. Cal. 2004)..........................................…...21

Marvin Lumber v. Norton Co.

113 F.R.D. 588 (D. Minn 1986)...................................................................7

North Pacifica, LLC v. City of Pacifica

335 F.Supp.2d 1045 (N.D. Cal. 2004),......................................................25

Rico v. Mitsubishi Motors Corp.

42 Cal.4th 807 (Dec. 13, 2007).................................................................8

Roadway Express, Inc. v. Piper

447 U.S. 752, 764-66 (1980)...............................................................…...7

Sells v. Wamser

158 F.R.D. 390, 393-394 (S.D. Ohio 1994)..............................................25

Stencel v. Fairchild Corp.

174 F.Supp.2d 1080, 1082-1085,1087 (C.D. Cal. 2001)..............................4,21

Wang Lab., Inc. v. Toshiba Corp.

762 F. Supp. 1246, 1248 (E.D. Va. 1991)...............................................…....24

## I.   INTRODUCTION

Angeles[1] respectfully requests that this Court disqualify Dr. Rouhani, Mr. Hall, and NewFields as experts for McKesson and the Sorkin Parties in all capacities, and also that this Court disqualify all of their opinions, data, information and work product in their entirety for use in this litigation and in any way related to McKesson's property in Santa Fe Springs, California. ("McKesson's SFS Property").

Over three years ago, on October 4, 2004, this Court properly disqualified Dr. Stephens and DB Stephens & Associates ("DB Stephens") because Angeles had hired DB Stephens first, created a confidential relationship and communicated privileged information to DB Stephens.  Amazingly, McKesson and its counsel had improper *ex parte* contact with Angeles' experts, paid DB Stephens more money and caused DB Stephens to actually improperly switch sides during this litigation.

Ignoring this Court's initial order, McKesson and its counsel obstinately proceeded to take all of DB Stephens' tainted opinions and work product and transfer them all to their existing experts, including Nancy Bice and Geosyntec. This Court found McKesson's conduct unacceptable, and on January 18, 2008 disqualified both Nancy Bice and Geosyntec as well.

Amazingly, McKesson's testifying experts, including Dr. Rouhani, Mr. Hall and NewFields, all specifically and expressly admit that they relied on over **735 opinions and work product of DB Stephens** (disqualified) for their testifying opinions in this case.  They also admit that they each rely upon **dozens of expert reports prepared by Geosyntec** (disqualified) and also distinctly rely upon the opinions, testimony and work product offered by Nancy Bice and Lisa Van Tassell (Geosyntec employees), both also disqualified.  Dr. Rouhani, Mr. Hall and NewFields should all be disqualified for receiving, reviewing and indeed relying

---

[1] For purposes of this motion, all references to Angeles shall include Angeles Chemical Company, Inc., Greve Financial Services, Inc. and John Locke.

upon, opinions and work product that have already been deemed by this Court as disqualified.

More shockingly is that McKesson and its counsel have stated that they have absolutely no intention of following the Court orders or ceasing the continued use of all the opinions, work product and data generated by Dr. Stephens, DB Stephens, Nancy Bice and Geosyntec, even though they've all been disqualified by this Court, because (as McKesson's counsel asserts), "The only Orders issued by the Court have disqualified experts, not information." (See Declaration of Jeffery Caufield "Caufield Decl." at ¶ 23; Exh. 17). This Court should stop McKesson's attempted end-run around the Court's prior rulings on these issues.

Without a disqualification of Dr. Rouhani, Mr. Hall and NewFields, Angeles will be unfairly prejudiced. In this regard, Angeles will be forced to develop evidence against and cross-examine at deposition and trial its own expert DB Stephens precisely because McKesson's testifying experts rely so heavily upon the disqualified Dr. Stephens' and DB Stephens' opinions and work product. Similarly, if McKesson is allowed to continue to utilize all the work product, reports and opinions of Nancy Bice and Geosyntec here, Angeles will be forced to similarly develop evidence against and cross-examine its own expert DB Stephens in order to undermine the credibility and reliability of Nancy Bice and Geosyntec, since they also so heavily rely upon the disqualified DB Stephens. This amounts to severe and irreparable prejudice, and is exactly why the Courts disallow experts from switching sides in the middle of litigation.

Accordingly, this Court should disqualify Dr. Rouhani, Mr. Hall and NewFields (and all opinions, work product, information and data generated thereby), for use in this litigation and in any way relating to McKesson's SFS Property.

2

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   <u>This Court Disqualified Dr. Stephens and DB Stephens Over Three Years Ago on October 4, 2004</u>

This Court disqualified Dr. Daniel B. Stephens and DB Stephens & Associates on October 4, 2004.  (RJN at ¶ 1; Exhibit "Exh" A). As discussed in two previous successful motions to disqualify,[2] Angeles originally retained DB Stephens in January 2003 as a consulting expert to analyze certain deep core soil samples taken from the Angeles Property.  (Caufield Decl. at ¶ 2). During this relationship, Angeles and its other expert Shaw communicated confidential information illustrating Angeles's trial strategy, intended lines of proof, apportionment of liability and anticipated defenses to DB Stephens on numerous occasions.  (Caufield Decl. at ¶ 3). All of this information was strictly confidential because it indicated the trial strategy of how Angeles intended to prove that McKesson polluted the Angeles Site and how the subsurface layer underlying the Angeles Site effectively acted to block shallow groundwater contamination from migrating into McKesson's deeper groundwater. (Caufield Decl. at ¶ 4). Many of the critical test results contained in the DB Stephens Report were measured using highly subjective and interpretative means specific to DB Stephens, which were then incorporated into the confidential "DB Stephens Report" that was prepared for Angeles and that continues to be relied upon by Angeles' testifying experts today. (Caufield Decl. at ¶ 5).

On February 11, 2004, in accordance with FRCP Rule 26(b)(4), and in anticipation of facilitating and settling this case at mediation, Angeles provided McKesson with a copy of the Shaw Report, which relied heavily upon, and

---

[2] See Angeles' Motion to Disqualify Expert Witness [Dr. Stephens and DB Stephens and Associates] for McKesson, granted on October 4, 2004; and Angeles' Motion to Disqualify Nancy Bice and Geosyntec, granted on January 18, 2008. Angeles respectfully requests that this Court take judicial notice of these documents already on file in this action. See Request for Judicial Notice "RJN" at ¶¶ 1-2, 4-5; Exhibits A-B, D-E.

3

included as an attachment, the DB Stephens Report.[3] (Caufield Decl. at ¶ 6; Exh. 1).
On March 10, 2004 during the mediation, McKesson and its counsel shockingly
disclosed for the first time that they had hired DB Stephens as their own testifying
expert in October, 2003, nine months *after* Angeles hired DB Stephens. (Caufield
Decl. at ¶ 8).  Additional correspondence indicated McKesson's hiring of Dr.
Stephens as its testifying expert was for the purposes of refuting Shaw's analysis
and reliance on the DB Stephens report in order to contradict the use and
interpretation of the DB Stephens Report by Shaw. (Caufield Decl. at ¶ 9; Exh. 3).
In fact, counsel for McKesson considered these subjects "fair game." Id.  Basically,
McKesson planned to use Dr. Stephens himself to question the very report he
helped to create.

        As a result of this clear-cut case of an expert "switching sides," Angeles filed
a Motion to Disqualify DB Stephens on July 29, 2004. (RJN at ¶ 4). Therein,
Angeles established that the general two prong-test[4] regarding confidentiality and
policy concerns justified the disqualification of DB Stephens. Angeles submitted
evidence that it had a confidential relationship with DB Stephens and that
confidential information was exchanged between the two. Essentially, if DB
Stephens were allowed to contribute to McKesson's case, <u>after</u> receiving
confidential information relating to soils from the Angeles site and performing tests
critical to the proof of Angeles' case in chief, a serious conflict of interest would
exist. Id. This Court agreed, and on October 4, 2004, disqualified Dr. Stephens and
DB Stephens in their entirety. (RJN at ¶ 1).

---

[3] Prior to the mediation, the parties stipulated that all information prepared and disclosed
during the mediation was strictly confidential and could not be discovered. (Caufield Decl. at ¶ 7;
Exh. 2).
[4] In certain situations regarding the disqualification of an expert, courts look at (1)
whether it was objectively reasonable for the moving party to believe that it had a confidential
relationship with the expert; and (2) whether the moving party disclosed confidential information
to the expert that is relevant to the current litigation. Stencel v. Fairchild Corp., 174 F.Supp.2d

4

**B.**     **McKesson Ignored and Intentionally Violated this Court's Order by Transferring the DB Stephens Work Product to McKesson's Consulting Experts Nancy Bice and Geosyntec, Which This Court Also Disqualified on January 18, 2008**

Two years after the Court disqualified DB Stephens, a revelation during the November 28, 2006 deposition of McKesson's consulting expert Nancy Bice revealed that immediately *after* DB Stephens was disqualified in 2004, McKesson simply transferred DB Stephens' work product to its expert consulting firm Geosyntec. Regarding the work product created by DB Stephens, Nancy Bice, Principal Geologist at Geosyntec, testified:

> MS. BICE:    We still have that data as part of our database. I don't know if we still have the original.
> Q:    **So, at least, it's been incorporated into your current database?**
> A:    **Yes**. (Caufield Decl. at ¶ 10; Exh. 4).

Following Ms. Bice's revelation of this previously secret database, McKesson finally acknowledged its existence and produced the database to Angeles in late November, 2006. (Caufield Decl. at ¶ 11). McKesson's reason for withholding this database from Angeles became immediately apparent – **the database incorporated DB Stephens' work product into seven hundred and thirty five (735) database entries**.[5] (Caufield Decl. at ¶¶ 12-13; Exhs. 6-7). The database itself specifically identified and named DB Stephens as having added and modified specific data points as a result of its analysis, and consisted of data entries that expressly state were "added", "adjusted", "converted", and "updated" by "DBSA," the same DB Stephens that the Court determined could no longer participate in this litigation. Id. In other words, McKesson allowed its other experts to simply "step into the shoes" of disqualified expert DB Stephens and continue to

---

1080, 1082-1085 (C.D. Cal. 2001).
    [5] Despite being responsive to a document subpoena to Geosyntec and multiple requests for production, McKesson attempted to keep the databases a secret until Ms. Bice revealed its existence in her deposition. (Caufield Decl. at ¶ 10; Exh. 4).

5

utilize and rely upon the very same confidential and tainted work product created by the expert that this Court had previously disqualified.

Furthermore, after McKesson learned of the conflict it had created by hiring Angeles' expert, McKesson directed and increased DB Stephens' work load by having DB Stephens perform **over 1400 hours of work for McKesson** in an attempt to download all of DB Stephens information to McKesson's other experts before DB Stephens was disqualified. (Caufield Decl. at ¶¶ 14-15; Exhs. 8-9). Thereafter, McKesson had DB Stephens transmit an "Expert Report" to counsel for McKesson, John Edgcomb, on the <u>same day</u> Angeles' Motion to Disqualify DB Stephens was filed with the Court—June 29, 2004. (Caufield Decl. at ¶ 16; Exh. 10; See Fed Ex Receipt: 5.0 lbs "expert report" shipped to John Edgcomb by D.B. Stephens & Associates on 6/29/04). At the time, the scheduling order in effect did not require Expert Reports be provided until October 15, 2004—<u>three and one half months later</u>. (Caufield Decl. at ¶ 17; Exh. 11). Thus, McKesson essentially milked DB Stephens for his opinions, work product, and knowledge regarding work performed for Angeles immediately before the inevitable disqualification.

Also amazingly, the evidence proved that Nancy Bice and Geosyntec employees had over 60 communications with Dr. Stephens and DB Stephens, essentially adopting whole-heartedly DB Stephens' analysis, opinions, information and data. (Caufield Decl. at ¶ 18; Exh. 12; Declaration of Dr. James T. Wells, PhD, PG "Dr. Wells Decl." at ¶ 6).

In sum, McKesson's conduct during the time period of the original disqualification of DB Stephens showed a clear pattern and intentional attempt to subvert the Court's Order by simply transferring all of DB Stephens' data and work product to McKesson's other experts, effectively eliminating any negative impact the Court's disqualification of DB Stephens would have had.

Unfortunately for McKesson and its counsel, their intentional conduct caught

6

up with them.  Upon learning of McKesson's attempts to undermine the Court's

order, Angeles immediately moved to disqualify Nancy Bice and Geosyntec.  (RJN

at ¶ 5; Exh. F). Angeles identified the inherent prejudice in allowing subsequent

experts to simply incorporate DB Stephens' work product into their own opinions

in contravention of the prior Order.  On January 18, 2008, this Court appropriately

disqualified Nancy Bice and Geosyntec from serving as experts for McKesson in

any capacity.[6]  (RJN at ¶ 2).

Now, McKesson and its counsel are continuing the <u>exact same conduct</u>.

Seemingly unashamed of their prior misconduct, Dr. Rouhani, Mr. Hall and

NewFields all expressly rely upon DB Stephens, Dr. Stephens, Nancy Bice and

Geosyntec (all disqualified) in offering their written opinions and testimony in this

case.  This Court should similarly disqualify such experts for their heavy reliance

upon disqualified experts in this litigation.

## III.   **LEGAL ARGUMENT**

### A.   **This Court Has the Inherent Authority to Disqualify NewFields and the Individual Testifying Experts for McKesson**

"A district court is vested with broad discretion…to exclude testimony of

witnesses whose use at trial is in bad faith or would unfairly prejudice an opposing

party."  <u>Campbell Industries v. M/V Gemini</u>, 619 F.2d 24, 27 (9th Cir. 1980).

Federal Courts have the inherent power to disqualify expert witnesses to protect the

integrity of the adversary process, protect privileges that otherwise may be

breached, and promote public confidence in the legal system. <u>Campbell</u>, 619 F.2d at

27;  <u>Marvin Lumber v. Norton Co.</u>, 113 F.R.D. 588 (D. Minn 1986); <i>See also</i>

<u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991) and <u>Roadway Express, Inc. v.</u>

<u>Piper</u>, 447 U.S. 752, 764-66 (1980) (Federal courts have inherent power to impose

---

[6] McKesson has filed a Motion for Clarification regarding the Court's January 18, 2008 Order which is pending before the Court. The Motion in large part concerns whether the production of documents is required under the Order. However, the Court's Order is clear, and McKesson apparently concedes, that Nancy Bice and Geosyntec have in fact been disqualified.

7

sanctions against both attorneys and parties for "bad faith" conduct in litigation or for "<u>willful disobedience</u>" of a court order).

Dr. Rouhani, Mr. Hall and the others at NewFields have already used and relied upon the information generated by Dr. Stephens, DB Stephens, Nancy Bice and Geosyntec.  Case law is clear that since this information cannot be removed from NewFields' and its employee's brains, and the only satisfactory solution is disqualification.  For example, see <u>Cargill Inc. v. Budine</u>, Slip Copy, 2007 WL 1813762 at *10 (E.D. Cal., June 22, 2007) (holding that when an opposing attorney obtains improper information from the other's expert, the opposing attorney should be disqualified because, "[h]aving become privy to [the other's] work product, there is no way the offending attorney could separate that knowledge from his or her preparation of the case"). This Court should also find <u>Rico v. Mitsubishi Motors Corp.</u>, 42 Cal.4th 807 (Dec. 13, 2007) persuasive, wherein the California Supreme Court disqualified counsel and their experts based on exposure to *one page* of an adversary's confidential information that was intentionally disseminated by counsel.

**B.**      <u>**McKesson's Counsel Admits a Conscious and Deliberate Violation of This Court's 2004 Disqualification Order**</u>

Most alarming is the fact that despite two Court Orders actually condemning McKesson's conduct, McKesson admits and flaunts the fact that its decisions to disregard this Court's prior two Orders were <u>deliberate and intentional</u>. Specifically, McKesson wrongly asserts that the Court's 2004 Order "**did not impose any restrictions**" on the use of DB Stephens' <u>**work product**</u>. (RJN at ¶ 8; Exh. J; Motion for Continuance at 3:12-16)(emphasis added).[7]

---

[7] McKesson made this same argument in its Opposition to Angeles' Motion to Disqualify Nancy Bice and Geosyntec. (RJN at ¶ 6; See Opposition at 4:6-8). This Court properly rejected this notion since there is no authority that requires a party to specifically identify and request that each document, electronic file, and piece of work product created by an expert deemed disqualified by the Court likewise be off-limits. Nevertheless, McKesson continues to argue exactly the same, even after this Court's January 18, 2008 Order.

Indeed, McKesson reiterated the same misguided argument in a recent meet and confer letter, wherein McKesson contended:

> "Plaintiffs do not cite to a single order "disqualifying" any information. **The only Orders issued by the Court have disqualified experts, not information**." (Emphasis added.) (Caufield Decl. at ¶ 23; Exh. 17; February 14, 2008 letter at p. 2, ¶ 2).

McKesson's disturbing admissions make clear that it has <u>no intention</u> of ceasing its practice of distributing Angeles' former disqualified experts' work product to any person it comes in contact with.

As previously briefed in the two prior disqualification motions on these issues, allowing subsequent experts to pick up where a disqualified expert left off and use all his or her research, opinions, work product, data and information is as blatant of an attempt to circumvent and undermine the Court's Orders that could be imagined. McKesson's theory that the Court did not prohibit the continued use of a disqualified expert's work product would create absolutely no incentive for McKesson *not* to try to actually **purchase** Angeles' experts and throw enough money to get them to "switch sides" in the middle of litigation, which is exactly what has happened here.  See <u>American Protection Insurance Company v. MGM Grand Hotel-Las Vegas, Inc.</u>, 1986 WL 57464 at *6 (D.Nev. 1986)(experts cannot flaunt their loyalties to clients and "sell their testimony to the highest bidder").

Under McKesson's distorted logic, when caught, McKesson could simply transfer all work done to that point to another expert, and suffer no prejudice whatsoever. This is <u>exactly</u> what has happened here, and is <u>exactly</u> the reprehensible conduct that McKesson requests this Court to condone.  McKesson and its counsel have been caught red-handed intentionally and deliberately feeding their testifying experts data created by experts that have been disqualified in this litigation, <u>and they've admittedly done it for the last three years</u>. As such, this

9

Court should disqualify Dr. Rouhani, Mr. Hall and all NewFields and its employees for these reasons and those more particularly set forth below.

### C.   Dr. Rouhani Should Be Disqualified

#### 1.   Dr. Rouhani Admittedly Read, Reviewed and Relied Upon Approximately 735 Opinions and Data Entries Created by Dr. Stephens and DB Stephens (Now Disqualified) – In Direct Contravention of this Court's Prior Order of October, 2004

McKesson and its counsel have known that Dr. Stephens and DB Stephens have been disqualified for use in connection with this litigation dating back over three years since October, 2004. Unbelievably, they knowingly and intentionally gave Dr. Rouhani as their testifying expert in this case the <u>exact same</u> data and opinion information of Dr. Stephens and DB Stephens that recently compelled the disqualification of Nancy Bice and Geosyntec on January 18, 2008.

Most importantly, Dr. Rouhani produced as documents that he read, reviewed and relied upon for his testifying opinions in this litigation the very same "locations database" and "water levels database" created by Dr. Stephens and DB Stephens – as worked on and modified Nancy Bice and Geosyntec - that **<u>explicitly, expressly and unambiguously identifies the work product of Dr. Stephens and DB Stephens a whopping seven hundred and thirty five (735) times.</u>**  (Caufield Decl. at ¶¶ 27-28; Exhs. 20-21; Dr. Wells Decl. at ¶ 2).[8]

Demonstratively, within the "locations database" itself, of the 624 total entries of data, amazingly **<u>320</u>** of them (over 50%) expressly cite to DB Stephens as

---

[8]  Specifically, in the expert document production for Dr. Rouhani, McKesson and its counsel submitted the electronic Access files on CD, bates numbered "Vol. 2 – SR046815". (Caufield Decl. at ¶ 27).  The identical and tainted "locations database" and "water levels database" that served as the basis for disqualification of Nancy Bice and Geosyntec, (Caufield Decl. at ¶¶ 12-13; Exhs. 6-7) can be found on that CD at the file and pathname: D:\Additional Items - Electronic CD\Mwild files and documents - original format\mckesson_20060925.mdb. (Caufield Decl. at ¶ 27).

Attached hereto to the Declaration of Jeffery Caufield at ¶ 31; Exh. 24 is a true and correct copy of the relevant portions of Dr. Rouhani's database, with Angeles' counsel's numbering on the right-hand column identifying the number of DB Stephens' work product entries. Angeles submits this version in order to reduce the burden on the Court in having to verify the accuracy of the amount of DB Stephens' input.

1  the entity creating the data and information used and relied upon in the database.

2  (Caufield Decl. at ¶¶ 27, 31; Exhs. 20, 24)  Within the "water levels database", of

3  the 1,971 entries of data, astoundingly **415** of them (over 20%) explicitly cite to DB

4  Stephens as the author.  (Caufield Decl. ¶¶ 28, 31; Exhs. 21, 24).

5       DB Stephens added and modified specific data points as a result of its

6  analysis, and this database relied upon by Dr. Rouhani consists of thousands of data

7  entries that expressly state were "added", "adjusted", "converted", and "updated"

8  by DB Stephens, the same DB Stephens that the Court determined could no longer

9  participate in this litigation.  Id. For example, to gain a flavor of the highly

10  inappropriate conduct and violation of the Court's Order, below are a few excerpts

11  of two tables currently and admittedly relied upon by Dr. Rouhani that clearly

12  reference Daniel B. Stephens and Associates (cited below as DBSA or DBS&A)[9]:

### Water Levels Table

| name | date | dbsa_source | dbsa_qa | dbsa_notes |
|------|------|-------------|---------|------------|
| AMW-01 | 2/1/1994 | SF0005 | JRF | DBS&A Changed mp_elevation and wl_elevation |
| AMW-01 | 11/30/2000 | SF0058/SF0213 | JRF | Added by DBS&A JRF |
| AMW-07 | 2/1/1994 | SF0003/SF0213 | JRF | DBS&A Changed wl_depth |
| AMW-07 | 11/30/2000 | SF0213/SF0058 | JRF | Added by DBS&A JRF |

### Locations Table

| name | property | DBSA_notes | DBSA_source | DBSA_qa | DATEUPLOAD |
|------|----------|------------|-------------|---------|------------|
| AA17 | ACC | Coordinates Added DBS&A | SF0167 | | |
| ABH-01 | ACC | Adjusted DBS&A, switched with ABH-11 | SF0004 Fig 2 | | 4/20/2005 |
| ABH-02 | ACC | Adjusted DBS&A | SF0004 Fig 2 | | 4/20/2005 |
| ABH-15-00 | ACC | Added DBS&A | SF0146 | | |
| ABSB-02 | ACC | DBS&A Converted from SP83caV to SP27caVII | | | |

23       These facts definitively prove that McKesson intentionally has continued to

24  utilize the very tainted and disqualified work product of Dr. Stephens and DB

25  Stephens, which has admittedly served as the basis for Dr. Rouhani's testifying

26  opinions here.  For these reasons alone, and for the same reasons this Court

---

[9] Tables have been shortened here for formatting purposes. (Full versions located at Caufield Decl. at ¶¶ 27-28, 31; Exhs. 20-21; 24).

disqualified Nancy Bice and Geosyntec, this Court should disqualify Dr. Rouhani.

## 2. Dr. Rouhani Has Admitted Relying Upon the Opinions, Reports and Data Generated by Nancy Bice and Geosyntec (Both Disqualified) for His Own Opinions and Testimony Here

Dr. Rouhani's written expert report expressly indicates that,

"The opinions stated above are **based on** the analysis of the available extensive soil, groundwater, and soil gas data collected in and around the McKesson and Angeles sites, as provided to me by Bingham McCutchen LLP and the Law Office of John D. Edgcomb." (Emphasis added.) (Caufield Decl. at ¶ 32; Exh. 25).

As part of the expert disclosure, Dr. Rouhani produced a litany of opinions, reports and data generated by Nancy Bice and Geosyntec that he admittedly read, reviewed and relied upon for his testifying expert opinions in this litigation. First, specifically, Dr. Rouhani relied upon the Geosyntec database (that includes the "locations table" and "water levels table" described above) citing to Dr. Stephens and DB Stephens 735 times as an author. (Caufield Decl. at ¶¶ 27-28, 31; Exhs. 20-21, 24). The Geosyntec database alone provides this Court with enough evidence to disqualify Dr. Rouhani as DB Stephens and Geosyntec were already disqualified.

Second, Dr. Rouhani admits through expert disclosure that he read, reviewed and relied upon a whole host of other opinions, reports and data generated by Nancy Bice and Geosyntec related to this litigation, including the following:

1. Geosyntec PowerPoint presentation prepared by Nancy Bice and Lisa Van Tassell — 7/30/03
2. Geosyntec Comments on Summary Site Characterization — 4/26/04
3. Geosyntec Off-site Groundwater Investigation Work Plan — 5/21/04
4. Geosyntec 2005 3rd Quarter Groundwater Monitoring Report — 11/15/05
5. Geosyntec 2006 1st Quarter Groundwater Monitoring Report — 6/15/06
6. Geosyntec 2006 Appendices
7. Geosyntec 2006 2nd Quarter Groundwater Monitoring Report — 11/1/06
8. Geosyntec Second Five-Year Review Report — 2/19/07

12

| | | |
|---|---|---|
| 9. | Geosyntec 2006 Fourth Quarter Groundwater Monitoring Report (Caufield Decl. at ¶¶ 33-41; Exhs. 26-34). | 3/19/07 |

As illustrated above, it is quite clear that Dr. Rouhani admittedly relies upon extensive work, opinions and reports prepared by Nancy Bice and Geosyntec in this litigation.  Dr. Rouhani should not be allowed to rely upon the voluminous expert opinions and reports prepared by Nancy Bice and Geosyntec, when all of that consulting expert work has been absolutely barred and disqualified from use in this litigation already by this Court in its Order dated January 18, 2008. (RJN at ¶ 2). Therefore, since Dr. Rouhani admits that he extensively relies upon disqualified experts, Dr. Rouhani should be disqualified.

### 3. Dr. Rouhani Relies Upon Nancy Bice and Lisa Van Tassell of Geosyntec (All Disqualified) For His Testifying Opinions in this Litigation

Moreover, Dr. Rouhani readily admits that he reviewed and relied upon the deposition transcripts of Nancy Bice and Lisa Van Tassell (another Geosyntec employee) in connection with his opinions and the preparation of his expert report in this litigation.  Specifically, Dr. Rouhani admits that he reviewed and relied upon the following:

| | | |
|---|---|---|
| 1. | Deposition of Nancy Bice | 10/20/2006 |
| 2. | Deposition of Lisa Van Tassell (Geosyntec employee) | 10/23/2006 |
| | (Caufield Decl. at ¶¶ 42-43; Exhs. 35-36; Dr. Wells Decl. at ¶ 4). | |

Dr. Rouhani should not be allowed to rely upon any information pertaining to Nancy Bice and other Geosyntec employees in connection with this litigation precisely because they have been disqualified.  Therefore, Dr. Rouhani should be disqualified.

**D.     More Importantly, Mr. Hall Should Also Be Disqualified**

### 1. McKesson and Its Counsel Admit that Their Intent Was to Have Mr. Hall Rely Upon DB Stephens Opinions, Data and Work Product, and "Step Into the Shoes" of Dr. Stephens

McKesson and its counsel admit that Mr. Hall was intended to step into the shoes of Dr. Stephens as its chief testifying expert. "As a result of his [Dr. Stephens'] disqualification, McKesson had to, and did, find a qualified replacement hydrology expert, Mr. William L. Hall, P.E., of NewFields, LLC before the initial expert report disclosure deadline of August 15, 2007." (RJN at ¶ 7; Exh. I; Ex parte Motion for Clarification at 5:11-14).  Based on (1) the irrefutable admissions by McKesson and Mr. Hall below that he reviewed and relied upon the same DB Stephens work product, opinions and data that caused the disqualification of Nancy Bice and Geosyntec, and (2) considering the fact that McKesson and its counsel are playing games by arguing that there are "**no limitations**" on using DB Stephens, Nancy Bice and Geosyntec's work product, information and data (and that this Court only "**disqualified experts, not information**"), this Court should disqualify Mr. Hall, NewFields, and all the opinions, information, work product and data compiled and created thereby for the numerous powerful reasons described in detail below.

### 2. Mr. Hall Also Amazingly Admits Relying Upon Hundreds of Opinions and Data Entries of DB Stephens and Dr. Stephens Disqualified from this Litigation Over Three Years Ago

As part of the documents produced by Mr. Hall in support of his testifying opinions, McKesson and its counsel produced the "locations" database starting at bates number WLH000050321-50418 which directly references over three hundred times the disqualified DBSA and Dr. Stephens.  (Caufield Decl. at ¶ 29; Exh. 22; Dr. Wells Decl. at ¶ 2).

**Specifically, Mr. Hall's production of documents regarding the**

14

**"locations database" expressly references Dr. Stephens and DBSA three hundred and twenty (320) times**.  (Caufield Decl. at ¶ 29; Exh. 22).

As described above, this amounts to over 50% of the total data entries of this unique database.  The following is a small example of the references to DB Stephens and Dr. Stephens work relied upon by Mr. Hall:

Locations Table

| name | property | DBSA_notes | DBSA_source | DBSA_qa | DATEUPLOAD |
|------|----------|------------|-------------|---------|------------|
| AA17 | ACC | Coordinates Added DBS&A | SF0167 | | |
| ABH-01 | ACC | Adjusted DBS&A, switched with ABH-11 | SF0004 Fig 2 | | 4/20/2005 |
| ABH-02 | ACC | Adjusted DBS&A | SF0004 Fig 2 | | 4/20/2005 |
| ABH-15-00 | ACC | Added DBS&A | SF0146 | | |
| ABSB-02 | ACC | DBS&A Converted from SP83caV to SP27caVII | | | |

Certainly, Mr. Hall should not be allowed to rely upon hundreds of tainted data and opinion entries of Dr. Stephens and DB Stephens in direct contravention of this Court's October, 2004 Order.  For this reason alone, Mr. Hall should be disqualified.

> **3.  McKesson and Its Counsel Have Now Been Caught Red-Handed "Doctoring" the Evidence Regarding Mr. Hall's Testifying Opinions, Attempting to Hide His Reliance Upon Dr. Stephens and DB Stephens**

Additionally, Mr. Hall further submitted to Angeles a copy of the "water levels database" that is in every substantive way identical to the "water levels database" relied upon by Dr. Rouhani that references Dr. Stephens and DB Stephens.  McKesson and its counsel produced the "water levels database" starting at bates number WLH000050321-50418 **which directly references four hundred and fifteen (415) times**, the DB Stephens and Dr. Stephens **opinions and data** that has caused the disqualification of Dr. Stephens, DB Stephens, Nancy Bice and Geosyntec. (Caufield Decl. at ¶ 30; Exh. 23).

The key difference between the databases is that McKesson and its counsel

15

have intentionally "deleted" the columns expressly referencing DB Stephens –
**<u>which amounts to the intentional deletion of four hundred and fifteen (415)</u>**
**<u>references to DBSA and Dr. Stephens</u>** – in an apparent attempt to mislead counsel
and this Court.  <u>Id</u>. Amusingly, they only deleted the DBSA references, but NOT
the identical 1,971 substantive entries that comprise the hard data and opinions
generated by DB Stephens. <u>Id</u>.

  A closer look illuminates McKesson's misconduct.  The following excerpts
from the Water Levels Table illustrate that all the substantive data, as changed and
added by DB Stephens, is identical in every way in the two tables offered by Dr.
Rouhani and Mr. Hall. The only difference is that McKesson and its counsel (either
intentionally or curiously inadvertently) deleted all references to DB Stephens in
Mr. Hall's expert disclosure. Below are excerpts from both experts' disclosures:

Water Levels Table (As Produced By Dr. Rouhani)

| name | date | wl_depth | mp_elevation | wl_elevation | dbsa_notes |
|---|---|---|---|---|---|
| AMW-01 | 2/1/1994 | 30.05 | 150 | 119.95 | DBS&A Changed mp_elevation and wl_elevation |
| AMW-04 | 2/1/1994 | 23.35 | 148.27 | 124.92 | DBS&A Changed mp_elevation and wl_elevation |
| AMW-07 | 2/1/1994 | 24.53 | 148.62 | 124.09 | DBS&A Changed wl_depth |
| AMW-07 | 6/14/2002 | 30.07 | 148.62 | 118.55 | Added by DBS&A JRF |
| AMW-08 | 6/14/2002 | 30.91 | 149.63 | 118.72 | Added DBS&A |
| AMW-09 | 6/14/2002 | 30.98 | 149.16 | 118.18 | Added by DBS&A JRF |
| EW-01 | 12/9/2003 | 54.15 | 152.54 | 98.39 | Added by DBS&A |
| MW-01 | 12/9/2003 | 48.12 | 150.69 | 102.57 | Added by DBS&A |
| PIMW-01 | 12/9/2003 | left blank | 150.62 | left blank | Added by DBS&A |

Water Levels Table (As Produced By Mr. Hall)

| name | date | wl_depth | mp_elevation | wl_elevation | [dbsa_notes deleted][10] |
|---|---|---|---|---|---|
| AMW-01 | 2/1/1994 | 30.05 | 150 | 119.95 | **[dbsa_notes deleted]** |
| AMW-04 | 2/1/1994 | 23.35 | 148.27 | 124.92 | **[dbsa_notes deleted]** |

---

[10] The column and "**[dbsa_notes deleted]**" was added by counsel for Angeles for purposes of clarifying that McKesson and its counsel intentionally deleted the DB Stephens references, while all the other substantive information and columns remained exactly the same.

16

PLAINTIFFS' MOTION FOR DISQUALIFICATION OF NEWFIELDS ET AL.

| AMW-07 | 2/1/1994 | 24.53 | 148.62 | 124.09 | [dbsa_notes deleted] |
| AMW-07 | 6/14/2002 | 30.07 | 148.62 | 118.55 | [dbsa_notes deleted] |
| AMW-08 | 6/14/2002 | 30.91 | 149.63 | 118.72 | [dbsa_notes deleted] |
| AMW-09 | 6/14/2002 | 30.98 | 149.16 | 118.18 | [dbsa_notes deleted] |
| EW-01 | 12/9/2003 | 54.15 | 152.54 | 98.39 | [dbsa_notes deleted] |
| MW-01 | 12/9/2003 | 48.12 | 150.69 | 102.57 | [dbsa_notes deleted] |
| PIMW-01 | 12/9/2003 | left blank | 150.62 | left blank | [dbsa_notes deleted] |

Amazingly, the "water levels database" offered by Mr. Hall contains 1,971 data entries identical in every way to the Geosyntec database offered by Dr. Rouhani – including well names, dates of sampling, water level, mp elevation, wl elevation. Every single aspect, page and data entry of the water levels database is absolutely identical to that relied upon by Dr. Rouhani (and that relied upon by Nancy Bice and Geosyntec), except for the startlingly obvious deletion of the exact same columns that reference DBSA and Dr. Stephens.

Angeles submits to this Court that McKesson and its counsel have lamely attempted to "sanitize" the data Mr. Hall relied upon, albeit ineffectively, by sophomorically deleting the very columns referencing DB Stephens and Dr. Stephens that they failed to delete in connection with Dr. Rouhani. The data is the same. The harm is done. Mr. Hall obviously relied upon the substantive data created and derived by Dr. Stephens and DB Stephens that still remains in the report – precisely because it is all exactly the same. McKesson's deletion of just the column referencing Dr. Stephens and DBSA does nothing to save it from its own botched "cover-up", but in fact it only serves to exacerbate their misguided behavior. If anything, McKesson's and its counsel's outrageous decision to attempt to hide their misconduct and circumvent the disqualification of NewFields and its employees underscores the extent to which McKesson will go to mislead counsel and this Court. For these reasons, the Court should disqualify Mr. Hall and all his opinions and work product from every aspect of this litigation and in any way relating to McKesson's property in Santa Fe Springs.

17

### 4. Mr. Hall Admittedly Relied Upon the Opinions of Nancy Bice and Geosyntec (Now Disqualified) in Preparing His Own Opinions and Testimony Here

Mr. Hall's written expert opinion offered in connection with and describing the bases for his several opinions specifically references the database prepared by Geosyntec (dated November 30, 2005) in connection with the "McKesson database." (Caufield Decl. at ¶ 45; Exh. 38). It is this "database" that contains all the same "locations" and "water levels" work product (735 opinion and data entries) created by Dr. Stephens and DB Stephens which the Court found supported disqualification of Nancy Bice and Geosyntec. It is this database that should similarly disqualify Mr. Hall's opinions, and cause the Court to disqualify him.

Additionally Mr. Hall expressly reviewed and relied upon the following several dozen documents and voluminous work produced by Geosyntec and Nancy Bice <u>after</u> Ms. Bice and Geosyntec extensively collaborated with DB Stephens and <u>using</u> the DB Stephens information:

| | | |
|---|---|---|
| 1. | Geosyntec Shallow Groundwater Monitoring Well Report | 11/17/03 |
| 2. | Geosyntec Off-site Sample Location Map, Former McKesson Facility | 4/1/04 |
| 3. | Geosyntec Comments on Summary Site Characterization | 4/26/04 |
| 4. | Geosyntec Off-site Groundwater Invest. Work Plan | 5/21/04 |
| 5. | Geosyntec Off-property Investigation Report | 5/3/05 |
| 6. | Geosyntec 2005 3rd Quarter Groundwater Monitoring Rpt. | 11/15/05 |
| 7. | Geosyntec McKesson Database | 11/30/05 |
| 8. | Geosyntec cost estimates, source area remediation and continuing operation and maintenance | 1/26/06 |
| 9. | Geosyntec Appendix E: Laboratory analytical results | 6/15/06 |
| 10. | Geosyntec D: Soil vapor extraction summary | 6/15/06 |
| 11. | Geosyntec 2006 1st Qtr Groundwater Monitoring Rpt. | 6/15/06 |
| 12. | Geosyntec Appendices, 2006 2nd Qtr Groundwater Report | 11/1/06 |
| 13. | Geosyntec 2006 3rd Qtr. Groundwater Report | 2/17/07 |
| 14. | Geosyntec Second Five Year Review – Former McKesson Chemical Company | 2/19/07 |
| 15. | Geosyntec Supplemental Feasibility Study | 2/22/07 |
| 16. | Geosyntec 2006 4th Qtr. Groundwater Report (Caufield Decl. at ¶ 46; Exh. 38) | 3/19/07 |

18

As illustrated above, it is quite clear that Mr. Hall admittedly relied upon extensive work, opinions and reports prepared by Nancy Bice and Geosyntec in this litigation.  Mr. Hall should not be allowed to rely upon the voluminous expert work prepared by Nancy Bice and Geosyntec, when all of that consulting expert work has been absolutely tainted by reliance upon DB Stephens and barred and disqualified from use in this litigation already by this Court.  Therefore, Mr. Hall should also be disqualified.

### 5.  Mr. Hall Relies Upon Nancy Bice and Lisa Van Tassell of Geosyntec (All Disqualified) For His Testifying Opinions in this Litigation

Moreover, Mr. Hall readily admits in his written expert report that he reviewed and relied upon the deposition transcripts of Nancy Bice and Lisa Van Tassell (another Geosyntec employee) in connection with his opinions and the preparation of his expert report in this litigation.  (Caufield Decl. at ¶ 45; Exh. 38). Specifically, Mr. Hall admits that he reviewed and relied upon the following:

| | | |
|---|---|---|
| 1. | Deposition of Nancy Bice – Exhibits | 10/20/06 |
| 2. | Deposition of Nancy Bice | 10/20/06 |
| 3. | Deposition of Lisa Van Tassell (Geosyntec employee) | 10/23/06 |

Therefore, Mr. Hall should also be disqualified for relying upon Nancy Bice and Lisa Van Tassell of Geosyntec.

### 6.  Mr. Hall Relies Upon the Tainted Opinion of Dr. Rouhani

The written expert opinion offered by Mr. Hall, clearly and distinctly references Dr. Rouhani on the cover page as a "co-author" and definitive collaborator regarding Mr. Hall's testimony. (Caufield Decl. at ¶ 47; Exh. 38). Therefore, as more fully set forth above, since Dr. Rouhani himself has been so tainted and should be disqualified from this litigation, his work in connection with Mr. Hall should also lead the Court to bar the opinion testimony of Mr. Hall and also serve as further basis to disqualify Mr. Hall.

PLAINTIFFS' MOTION FOR DISQUALIFICATION OF NEWFIELDS ET AL.

**E.** **Dr. Rouhani, Mr. Hall and NewFields Should Also be Disqualified Because They Have Had Extensive Communications with the "DB Stephens Six"**

Angeles established in previous motions that Dr. Stephens, DB Stephens, John Edgcomb (McKesson's counsel), Jean Mescher (McKesson employee), Nancy Bice and Geosyntec have participated in approximately **60 conversations and communications** together regarding the expert opinions of DB Stephens and Dr. Stephens (collectively, the "DB Stevens Six"). (Caufield Decl. at ¶ 18; Exh. 12). The documented evidence proves that the DB Stephens Six also had more than a dozen conversations with representatives from NewFields, including Dr. Rouhani, Mr. Hall and Michael Wild (key contributor to both Dr. Rouhani and Mr. Hall's written opinions). (Caufield Decl. at ¶ 44; Exh. 37a-d; Dr. Wells Decl. at ¶¶ 3-4). Accordingly, since Mr. Hall, Dr. Rouhani and NewFields have all been tainted by extensive conversations with the DB Stephens Six, they too should be disqualified.

**F.** **Magnifying McKesson's Misconduct, McKesson and Its Counsel Were Less Than Forthright With this Court When They Certified That They NEVER Gave the DB Stephens Data or Opinions to NewFields or its Testifying Experts**

McKesson argued with a straight face to this Court that the same reasons that led to Geosyntec's disqualification "would not apply to the NewFields experts" because while Geosyntec may have possessed extensive DB Stephens work product, "NewFields possesses only the *Geosyntec* database, as demonstrated by NewFields' [sic] expert document production. . . ." (RJN at ¶ 7; Ex Parte Motion for Clarification at 10:14-11:7). Disturbingly, as strikingly outlined above, this statement to the Court (and certified by their attorneys under Rule 11) is simply not true. In fact, we now know that McKesson gave the DB Stephens databases to NewFields, Dr. Rouhani, and Mr. Hall. Even worse, Dr. Rouhani and Mr. Hall admit relying upon DB Stephens in their written expert opinions and for their

PLAINTIFFS' MOTION FOR DISQUALIFICATION OF NEWFIELDS ET AL.

testimony at trial.  This Court should not tolerate such insincerity – under certification – in writing to counsel and this Court.

Based on the clear evidence outlined in this and in prior motions, McKesson's use of DB Stephens' work product essentially amounts to an *ex parte* contact with a party's expert and is a flagrant violation of the provisions of FRCP, Rule 26. See Campbell, 619 F.2d at 27.  This conduct amounts to a clear "end-run" around this Court's Orders, and should not be tolerated. See Hewlett-Packard v. EMC Corp., 330 F. Supp. 2d 1087, 1095 (N.D. Cal. 2004).

### G.    NewFields As A Whole Should be Disqualified Because So Many Top-Level People Have Received Information Regarding Dr. Stephens, DB Stephens, Nancy Bice and Geosyntec

McKesson and its counsel admit that almost a dozen of the top tier professionals at NewFields have contributed, co-authored, collaborated and offered written and testifying opinions in this litigation.  (Caufield Decl. at ¶ 47; Exh. 38). Specifically, the following individuals employed by NewFields have worked together to offer (or contribute to) opinions in this case:

1. Dr. Rouhani;
2. Mr. Billy Hall;
3. Gilbert Dunn, P.G.;
4. Michael Wild, P.E.;
5. Kathryn A. Wurzel, MPH, DABT;
6. Stephen D. Emsbo-Mattingly, M.S.;
7. Buz Cotton, P.E.;
8. Maureen Leavitt, M.S.;
9. Lindsay Wallace;
10. Mr. Finley.

Disqualification of NewFields in its entirety is appropriate since it is apparent that neither McKesson nor NewFields even attempted to screen its remaining employees from DB Stephens' or Geosyntec's work product. Stencel v. Fairchild Corp., 174 F.Supp.2d 1080, 1087 (C.D. Cal. 2001)(adequate screen prohibiting "interactions" and "access" to prohibited documents required to avoid imputed

21

disqualification).  Quite to the contrary, McKesson and its counsel admit that almost a dozen of the top tier professionals at NewFields have contributed, co-authored, collaborated and offered written and testifying opinions in this litigation.

As described above, Dr. Rouhani and Mr. Hall have clearly read, reviewed and relied upon the opinions, data and information deemed excluded and disqualified in connection with not only Dr. Stephens and DB Stephens, but also Nancy Bice and Geosyntec.  The aforementioned individuals all participated in working on these opinions.  The excessive distribution of the opinions, data and information from DB Stephens, Dr. Stephens, Nancy Bice and Geosyntec is so prevalent within NewFields, that the entire company should be disqualified and barred from participating in any way associated with this litigation.  Furthermore, NewFields (its employees, officers, directors, shareholders and agents) should also be disqualified from participating in any environmental contamination issues concerning the McKesson property in SFS, precisely because McKesson and its counsel cannot be trusted and now intentionally attempted on numerous occasions to circumvent this Court's prior orders.

### H.   NewFields Appears to Already Have Begun Purging Its Connections to Prior Disqualified Experts

Included in Dr. Rouhani's January 4, 2008 production is an e-mail dated April 19, 2007 sent to multiple NewFields employees instructing them as follows:

> "**BUT-right now-this very second, I need you to delete two files from your computer**.  MckessonEDMS.mdb and Environ_data.mdb (found under C:\Projects\McKesson\AGIS\Environ)" (Emphasis added)(Caufield Decl. at ¶ 48; Exh. 39; Dr. Wells Decl. at ¶ 5; Exh. 1).

The stated basis for the destruction of these files by Mr. Wild is as follows: "I am in the process of updating the McKesson environmental database.  I should be finished next week."  Id. However, a review of Mr. Wild's timesheets reflecting his time surrounding the April 19, 2007 e-mail appears to refute the assertion in his e-

mail that he was working on databases.  Mr. Wild's timesheets reveal that he worked approximately .5 hours on the McKesson matter on April 13, 2007 and did nothing else on the matter until May 4, 2007.  (Dr. Wells Decl. at ¶ 5; Exh. 1 at WLH000144786). Accordingly, <u>for approximately 22 consecutive days surrounding Mr. Wild's April 18, 2007 e-mail he did not bill a single hour to "update" these databases</u>.  <u>Id</u>.  Coincidentally, Angeles' motion to disqualify Nancy Bice and Geosyntec was filed on April 13, 2007, **approximately 4 business days prior to Mr. Wild ordering the company-wide purge of two databases.** (Dr. Wells Decl. at ¶ 5).   Thus, it appears from the e-mail, timesheets and motion that the decision to purge certain files seems to have been motivated and/or in response to Angeles filing the motion to disqualify Nancy Bice and Geosyntec.  <u>Id</u>.

The evidence identified above strongly suggests that McKesson has continued to intentionally and deliberately circumvent this Court's prior orders using all available methods. This Court should not permit McKesson to continue to play fast and loose in this litigation. So many individuals at NewFields have been given access to the opinions and information relating to DB Stephens, Nancy Bice and Geosyntec that the place oozes with disqualified and tainted information. As such, McKesson's actions should result in the disqualification of NewFields as a whole.

**I.      The Parties Have Extensively Met and Conferred On These Issues**

The meet and confer process related to this motion commenced on January, 4, 2008 and consisted of six (6) letters and numerous e-mails between the parties. (Caufield Decl, at ¶¶ 19-25; Exhs. 13-19).  These issues were also the subject of the two prior motions to disqualify. (RJN at ¶¶ 4-5). Thus, the meet and confer correspondence transmitted by Angeles established the "substance" of this motion in satisfaction of local rule 7-3. The meet and confer process was satisfied as further outlined in detail at Caufield Decl. at ¶ 26.

PLAINTIFFS' MOTION FOR DISQUALIFICATION OF NEWFIELDS ET AL.

**J.**     **Policy Considerations Prohibit the Use of A Disqualified Expert's Work Product**

Despite this Court's prior orders, there still exists a direct conflict of interest here. Angeles' expert DB Stephens, and McKesson's former experts Nancy Bice and Geosyntec, collaborated and created a report containing extensive DB Stephens work product. NewFields (and its employees) are now taking much, if not all, of the information disqualified, expressly relying upon the disqualified experts, and attempting to evade the Court's Order. McKesson had *ex parte* and unfettered access to DB Stephens in violation of the federal discovery rules and attorney rules of ethical conduct. See Erickson v. Newmar Corp., 87 F.3d 298, 301 (9th Cir. 1996) (attorney chastised for offering monetary inducement for employment to an adversary's expert witness prior to the expert giving his testimony). This is undisputed based on the Orders in favor of Angeles.

Now, McKesson has simply taken the information disqualified and continued to use that same damaging information to their advantage—***again***.[11] By allowing a consulting expert to switch sides and testify as the opposing party's trial expert, or use the data and work product created by previously disqualified experts to form the basis of the opinion of NewFields and its experts (effectively reaching the same conclusion and prejudice to Angeles) on the very issue for which DB Stephens was originally retained would subvert the integrity of this Court and severely prejudice Angeles. See Campbell, 619 F.2d at 27. "To be sure, no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party pursuant to the earlier retention." Wang Lab., Inc. v. Toshiba Corp., 762 F. Supp. 1246, 1248 (E.D. Va. 1991).

24

**K.     Angeles Will Be Irreparably Prejudiced Should NewFields and Its Experts Be Permitted to Continue in This Litigation**

Most importantly, the visceral and common sense prejudice to Angeles stems from the fact that, now, Angeles is put in the unenviable position of being forced to develop evidence against, ask questions in deposition of, and cross-examine at trial (in front of judge and jury) Dr. Stephens and employees of DB Stephens in order to undermine the credibility and reliability of the testifying opinions of Mr. Hall and Dr. Rouhani (since they rely heavily upon DB Stephens).  See Sells v. Wamser, 158 F.R.D. 390, 393-394 (S.D. Ohio 1994)("it would be unseemly, at best, to permit representatives of the same…firm to testify on opposite sides of the case").

**In actuality, Angeles is now being forced to attack and undermine its own consulting expert witnesses**—(1) the very same witnesses that produced a written expert opinion for Angeles and who have been used, in part, to form the basis of Dr. Lorne Everett's expert testimony for Angeles in this case for many years, and (2) the very same expert witnesses that this Court for very good reason forbade McKesson (and its counsel) by Court Order from using in this litigation over three years ago, because McKesson's own testifying experts rely so heavily upon DB Stephens.  This circus act perpetuated by McKesson should be disallowed, and NewFields and its experts should be disqualified.

## IV.   CONCLUSION

For the foregoing reasons, this Court should disqualify NewFields in its entirety from further participating in any capacity for McKesson.

DATED:  March 12, 2008                    Caufield & James, LLP

Jeffery L. Caufield, Esq.
Attorney for Plaintiffs

---

[11] This conduct is nothing new for McKesson's counsel. See not only this Court's prior Orders (RJN at ¶¶ 1-2), but also North Pacifica, LLC v. City of Pacifica, 335 F.Supp.2d 1045 (N.D. Cal. 2004), wherein Bingham McCutchen attorneys were disqualified from giving expert testimony because they too "switched sides" in the middle of litigation, as is at issue now. The case was decided Sept. 16, 2004, approximately two weeks before this Court found the same here.