1  Jeffery L. Caufield (SBN 166524)
   jeff@caufieldjames.com
2  Kenneth E. James (SBN 173775)
   ken@caufieldjames.com
3  CAUFIELD & JAMES, LLP
   2851 Camino Del Rio South, Suite 410
4  San Diego, California 92108
   Telephone: 619-325-0441
5  Facsimile : 619-325-0231

6  Attorneys for Plaintiffs, Greve
   Financial Services, Inc., Angeles
7  Chemical Company, Inc., and John
   Locke

8

9              **UNITED STATES DISTRICT COURT**

10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  ANGELES CHEMICAL COMPANY,          ) Case No:  01-10532 TJH (Ex)
                                       )
12  INC., a California Corporation, GREVE )
                                       )
13  FINANCIAL SERVICES INC., a         ) DECLARATION OF JEFFERY
                                       ) CAUFIELD IN SUPPORT OF
    California Corporation, and JOHN    ) MOTION FOR
14                                      ) DISQUALIFICATION OF DR.
    LOCKE, an individual,              ) ROUHANI, MR. HALL, AND
15                                      ) NEWFIELDS
              Plaintiffs,              )
16                                      )
                                       )
17  vs.                                )
                                       ) Date: April 7, 2008
18                                      ) Time: Under Submission
    MCKESSON CORPORATION, a           ) Courtroom:  17
                                       ) Judge:  Hon. Terry J. Hatter, Jr.
19  California Corporation, et. al.,    )
                                       )
20            Defendants.              ) Discovery Cut-Off: June 11, 2007
                                       ) Pre-Trial Conference: June 23, 2008
21  _____) Trial Date: TBD

22

23

24

25

26

27

28

I, Jeffery L. Caufield, declare as follows:

1.     I am an attorney of record for Plaintiffs and Counter-Defendants, Greve Financial Services, Inc., a California corporation, Angeles Chemical Company, Inc., a California corporation, and John Locke, an individual (collectively, "Angeles") in the above entitled action.

2.     In January 2003, Angeles retained DB Stephens as a consulting expert to analyze certain deep core soil samples taken from the Angeles Property in order to better determine how water (and therefore pollution with that water) moves and migrates in the layers of soil beneath the Angeles Property.

3.     During this relationship, Angeles and its other expert Shaw communicated confidential information illustrating Angeles's trial strategy, intended lines of proof, apportionment of liability and anticipated defenses to DB Stephens on numerous occasions.

4.     All of this information was strictly confidential because it indicated the trial strategy of how Angeles intended to prove that McKesson  polluted the Angeles Property and how the subsurface layer underlying the Angeles Site effectively acted to block shallow groundwater contamination from migrating into McKesson's deeper groundwater.

5.     Many of the critical test results contained in the DB Stephens Report were measured using highly subjective and interpretative means specific to DB Stephens, which were then incorporated into the confidential "DB Stephens Report" that was prepared for Angeles and that continues to be relied upon by Angeles' testifying experts today.

6.     On February 11, 2004, in accordance with FRCP Rule 26(b)(4), and in anticipation of facilitating and settling this case at mediation, Angeles provided McKesson with a copy of the Shaw Report, which relied heavily upon, and included as an attachment, the DB Stephens Report. Attached hereto as **Exhibit 1** is

1  a true and correct copy of the cover page of the Shaw Report and attached DB
2  Stephens' Report, with transmittal letter dated February 10, 2004.

3        7.      Prior to the mediation, the parties stipulated that all information
4  prepared and disclosed during the mediation was strictly confidential and could not
5  be discovered. Attached hereto as **Exhibit 2** is a true and correct copy of the
6  "Stipulation Regarding Confidentiality of Communications During Mediation."

7        8.      On March 10, 2004 during the mediation, McKesson and its counsel
8  disclosed for the first time that they had hired DB Stephens as their own testifying
9  expert in October, 2003, nine months *after* Angeles hired DB Stephens.

10        9.      Attached hereto as **Exhibit 3** is a true and correct copy of a letter from
11  John Edgcomb dated April 28, 2004. See p. 1.

12        10.      Attached hereto as **Exhibit 4** is a true and correct copy of the relevant
13  pages of the deposition of Nancy Bice, dated October 20, 2006. See 177:2-14.

14        11.      Attached hereto as **Exhibit 5** is a true and correct copy of a transmittal
15  letter dated November 28, 2006. See ¶ 1.

16        12.      Attached hereto as **Exhibit 6** is a true and correct copy of the relevant
17  portions of McKesson's **"locations"** database transmitted on November 28, 2006,
18  as submitted to the Court in support of Angeles' Motion to Disqualify Nancy Bice
19  and Geosyntec. (Database was minimized to the relevant columns for formatting
20  purposes and the Court's review). The complete version of the identical database
21  Access file was produced by Dr. Rouhani, and is identified below and attached as
22  Exhibits 20 and 21.

23        13.      Attached hereto as **Exhibit 7** is a true and correct copy of the relevant
24  portions of McKesson's **"water levels"** database transmitted on November 28,
25  2006, as submitted to the Court in support of Angeles' Motion to Disqualify Nancy
26  Bice and Geosyntec. (Database was minimized to the relevant columns for
27  formatting purposes and the Court's review). The complete version of the identical

28

database Access file was produced by Dr. Rouhani, and is identified below and attached as Exhibits 20 and 21.

14.     Attached hereto as **Exhibit 8** are true and correct copies of invoices for D.B. Stephens & Associates. See e.g. 581.3 hours in February 2004 (MCKL0006463), 260.75 hours in March 2004 (MCKL0006475), 188.75 hours in April 2004 (MCKL0006476), 323.75 hours in May 2004 (MCKL0006485), and 108.4 hours in June 2004 (MCKL0006493).

15.     Attached hereto as **Exhibit 9** is a true and correct copy of a September 22, 2004 invoice for D.B. Stephens & Associates, outlining the radical drop in hours after the Motion to Disqualify DB Stephens was filed. See MCK10K0026326.

16.     Attached hereto as **Exhibit 10** is a true and correct copy of a Fed Ex Receipt: 5.0 lbs "expert report" shipped to John Edgcomb by D.B. Stephens & Associates on 6/29/04. See MCKL0006502.

17.     Attached hereto as **Exhibit 11** is a true and correct copy of the Stipulation and Proposed Order Re: Continuance of Scheduling Order Deadlines dated May 19, 2006 with attached May 14, 2004 email from John Edgcomb to Jeffery Caufield.

18.     Attached hereto as **Exhibit 12** are true and correct copies of invoices produced for the Law Offices of John Edgcomb by McKesson as part of the Form 10K production. See e.g. MCKL0006896-MCKL0006902: conference calls on 2/12 (x2), 2/13 (x2), 2/24, 2/25 and e-mails exchanged on 2/19 (x2) and 2/29 (x2); MCKL0006903-MCKL0006912: conference calls on 3/3, 3/8 (x2), 3/16, 3/19, 3/24, 4/7, 4/8 (x2), 4/14, 4/15, 4/19, 4/20, 4/21 (x2), 4/26, 4/30 (x2) and e-mails/ltrs on 3/1 (x2), 4/1 (x2), 4/14, 4/16, 4/30 (x2); MCKL0006914-MCKL0006943: conference calls on 5/3, 5/4 (x2), 5/11 (x2), 5/18, 5/19, 6/24, 6/28 and e-

DECLARATION OF JEFFERY CAUFIELD

mails/letters on 5/5, 6/2; MCKL0006929-MCKL0006943: conference calls on 7/1, 7/13, 7/20, 8/3, 8/10, 8/17 (x2) and e-mails on 8/19 (x2).

19.     Attached hereto as **Exhibit 13** is a true and correct copy of a meet and confer dated January 4, 2008 from J. Caufield to N. Wilms.

20.     Attached hereto as **Exhibit 14** is a true and correct copy of a meet and confer dated January 24, 2008 from J. Caufield to N. Wilms.

21.     Attached hereto as **Exhibit 15** is a true and correct copy of a meet and confer dated January 25, 2008 from N. Wilms to J. Caufield.

22.     Attached hereto as **Exhibit 16** is a true and correct copy of a meet and confer dated February 6, 2008 from J. Caufield to N. Wilms.

23.     Attached hereto as **Exhibit 17** is a true and correct copy of a meet and confer dated February 14, 2008 from N. Wilms to J. Caufield.

24.     Attached hereto as **Exhibit 18** is a true and correct copy of a meet and confer dated February 18, 2008 from J. Caufield to N. Wilms.

25.     Attached hereto as **Exhibit 19** is a true and correct copy of a string of emails from February 18, 2008-February 27, 2008 between N. Wilms and J. Caufield.

26.     As identified in ¶¶ 19-25, on January 4, 2008 (the same day as Dr. Rouhani's supplemental production) Angeles sent a meet and confer letter to McKesson regarding its proposed Motion for Disqualification of NewFields. Angeles sent a second meet and confer on January 24, 2008 after McKesson had not responded within the twenty-day period provided by Local Rule 7. McKesson finally responded to both in a response dated January 25, 2008, wherein McKesson disputed the arguments and evidence presented in those letters, refused to voluntarily withdraw its experts, yet concluded that Angeles had not met and conferred in good faith, as has become McKesson's staple in this litigation.

In an effort to address McKesson's concerns, Angeles sent a fifteen (15) page meet and confer letter on February 6, 2008 which essentially outlined this entire Motion. McKesson replied on February 14, 2008 in a letter laced with rhetoric and rather unprofessional accusations, wherein McKesson re-argued the validity of the Court's prior Orders, refused to withdraw its experts, yet continued to "tee up" its claims that Angeles did not properly meet and confer on the issues. Angeles sent a follow-up letter on February 18, 2008, wherein Angeles again identified the supporting evidence, pointed out that this exact issue has been briefed twice (and in opposition to McKesson's Motion for Stay of the Court's January 18, 2008 Order), and concluded that an impasse had been reached.

In a continued effort to prolong the meet and confer process indefinitely, counsel for McKesson sent additional sporadic emails contending that Angeles has not met and conferred in good faith. Nevertheless, McKesson filed two (2) ex parte motions wherein it sought to have this Court issue advisory opinions regarding its NewFields experts. In those motions, McKesson contended that Angeles "delayed" in bringing the instant Motion. This Court should not buy into McKesson's boiler-plate "delay" or "meet and confer" objections.

27.     Attached hereto as **Exhibit 20** is a true and correct copy of the **"locations database"** produced by Dr. Rouhani that identifies the work product of Dr. Stephens and DB Stephens approximately seven hundred and thirty five (735) times.  Specifically, the "locations database" was provided in the expert document production for Dr. Rouhani on CD, bates numbered "Vol. 2 – SR046815" at the file and pathname: D:\Additional Items - Electronic CD\Mwild files and documents - original format\mckesson_20060925.mdb.

5

DECLARATION OF JEFFERY CAUFIELD

28.     Attached hereto as **Exhibit 21** is a true and correct copy of the "**water levels database**" produced by Dr. Rouhani that identifies the work product of Dr. Stephens and DB Stephens approximately seven hundred and thirty five (735) times.  Specifically, the "water levels database" was provided in the expert document production for Dr. Rouhani on CD, bates numbered "Vol. 2 – SR046815" at the file and pathname: D:\Additional Items - Electronic CD\Mwild files and documents - original format\mckesson_20060925.mdb.

29.     Attached hereto as **Exhibit 22** is a true and correct copy of the "**locations database**" as produced by Mr. Hall, bates numbered WLH000050321-50418.

30.     Attached hereto as **Exhibit 23** is a true and correct copy of the "**water levels database**" produced by Mr. Hall, bates numbered WLH000052747-WLH000052830.

31.     Attached hereto as **Exhibit 24** is a true and correct copy of the relevant portions of Dr. Rouhani's database, with Caufield & James' work product on the right-hand column identifying the number of DB Stephens' work product entries. Angeles submits this version in order to reduce the burden on the Court in having to verify the accuracy of the amount of DB Stephens' input.

32.     Attached hereto as **Exhibit 25** is a true and correct copy of the relevant pages of Dr. Rouhani's expert report. See p. 49.

33.     Attached hereto as **Exhibit 26** is a true and correct copy of representative pages of the Geosyntec PowerPoint presentation prepared by Nancy Bice and Lisa Van Tassell, dated 7/30/03; bates numbered SR025855-SR025934 (80 pages).

34.     Attached hereto as **Exhibit 27** is a true and correct copy of Geosyntec's comments on summary site characterization report prepared by Shaw, dated 4/26/04; bates numbered SR018876-SR01964 (89 pages) (attachment omitted).

35.     Attached hereto as **Exhibit 28** is a true and correct copy of the representative pages of Geosyntec's Off-Site Groundwater Investigation Work Plan, dated 5/21/04; bates numbered SR012714-SR012725 (12 pages).

36.     Attached hereto as **Exhibit 29** is a true and correct copy of the representative pages of Geosyntec's Third Quarter 2005 Groundwater Monitoring Report, dated 11/15/05; bates numbered SR032472-SR032676  (205 pages).

37.     Attached hereto as **Exhibit 30** is a true and correct copy of the representative pages of Geosyntec's First Quarter 2006 Groundwater Monitoring Report, dated 6/15/06; bates numbered SR011530-SR011641 (112 pages).

38.     Attached hereto as **Exhibit 31** is a true and correct copy of the representative pages of the Appendices from Geosyntec's 2006 report, dated 9/15/06; bates numbered SR044300-SR044770 (471 pages).

39.     Attached hereto as **Exhibit 32** is a true and correct copy of the representative pages of Geosyntec's Second Quarter 2006 Groundwater Monitoring Report, dated 11/1/2006; bates numbered SR016046-SR016077 (32 pages).

40.     Attached hereto as **Exhibit 33** is a true and correct copy of the representative pages of Geosyntec's Second Five-Year Review Report, dated 2/19/07; bates numbered SR032792-SR033046 (255 pages).

41.     Attached hereto as **Exhibit 34** is a true and correct copy of the representative pages of Geosyntec's Fourth Quarter 2006 Groundwater Monitoring Report, dated 3/19/07; bates numbered SR017919-SR018481 (563 pages).

DECLARATION OF JEFFERY CAUFIELD

42.     Attached hereto as **Exhibit 35** is a true and correct copy of the representative pages of the deposition of Nancy Bice, dated 10/20/2006, bates numbered SR001536-SR002050 (515 pages).

43.     Attached hereto as **Exhibit 36** is a true and correct copy of the representative pages of the deposition of Lisa Van Tassell, dated 10/23/2006; bates numbered SR045252-SR045394 (143 pages).

44.     Attached hereto as **Exhibit 37a-d** are true and correct copies of correspondence amongst NewFields, John Edgcomb (McKesson's counsel), Jean Mescher (McKesson employee), Nancy Bice, and various Geosyntec employees.

Mr. Wild and NewFields had over a dozen conversations with representatives from Geosyntec, including Lisa Van Tassell, Alene Pearson, and Nancy Bice, all of whom were disqualified on January 18, 2008. See WLH000144836-38, WLH000144844, WLH000144858, WLH000144861-63, WLH000144873, (all produced on January 4, 2008), WLH000055891-93, and WLH000055878, attached hereto as **Exhibit 37a**. The emails demonstrate that Michael Wild was intimately involved in preparing and handling the data (including the DBSA database) for Mr. Hall's expert report. See WLH000055889, WLH000055894, and WLH000144843. Attached hereto as **Exhibit 37b**.

The emails also between Dr. Rouhani, Mr. Hall, and Mr. Wild, and Jean Mescher, John Edgcomb and Nancy Wilms (each of whom had extensive and pervasive contact with DB Stephens) demonstrate that consultation among the parties was persistent. Moreover, the emails also identify additional telephonic conference calls and web meetings between the "DB Stephens Six." See SRSupp001595-96; SRSupp001625-26; SRSupp000202; SRSupp001613-14; SRSupp001610-12; SRSupp001631-32, SRSupp000197, etc., attached hereto as **Exhibit 37c**. See also SRSupp001664,demonstrating that Dr. Rouhani's and Mr. Hall's reports and opinions are so intertwined that Dr. Rouhani's report was

DECLARATION OF JEFFERY CAUFIELD

1     contemplated as being an attachment to Mr. Hall's report, email attached hereto as

2     **Exhibit 37d**.

3          These documents were produced in Dr. Rouhani's January 4, 2008

4     supplemental production, as ordered by Magistrate Eick—See RJN at ¶ 3.

5          45.     Attached hereto as **Exhibit 38** is a true and correct copy of the relevant

6     pages of Mr. Hall's expert report. See p. 88, line 3 ("McKesson database"). See also

7     p. 89, lines 10-11, 13-14 (Depositions of Nancy Bice and Lisa Van Tassell).

8          46.     See <u>Exhibit 38</u>, Hall Expert Report, at pp. 85-90.

9          47.     See <u>Exhibit 38</u>, Hall Expert Report, at p. 1.

10        48.     Attached hereto as **Exhibit 39** is a true and correct copy of an e-mail

11     dated April 19, 2007 from Michael Wild to multiple NewFields' employees, bates

12     numbered SR046818. See also Declaration of James T. Wells at ¶ 5; Exhibit 1.

13

14          I declare under penalty of perjury that the foregoing is true and correct.

15

16          Executed in San Diego, California on March 12, 2008.

17

18

19     DATED: March 12, 2008             Caufield & James, LLP

20

21                                    Jeffery L. Caufield, Esq.
                                       Attorney for Plaintiffs

22

23

24

25

26

27

28

DECLARATION OF JEFFERY CAUFIELD